UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARIA SANCHEZ M.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 2:19-cv-08600-JDE <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Maria Sanchez M. ("Plaintiff") filed a Complaint on October 6, 2019, seeking review of the denial of her application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on August 6, 2020. The matter is now ready for decision.

---

[1] Plaintiff's name has been partially redacted under Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# BACKGROUND

Plaintiff protectively filed her application for DIB on December 21, 2015, alleging disability commencing on January 28, 2011. AR 21, 43, 164. On September 19, 2018, after her application was denied initially (AR 73) and on reconsideration (AR 85), Plaintiff, represented by counsel, testified via video hearing in Los Angles, California, before an Administrative Law Judge ("ALJ") presiding in Albuquerque, New Mexico. AR 21, 44-55. A vocational expert ("VE") also testified telephonically. AR 21, 54-60. At the hearing, counsel amended the onset date to November 1, 2013. AR 21, 43-44.

On October 11, 2018, the ALJ issued a decision concluding Plaintiff was not disabled. AR 21-33. He found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. AR 23. The ALJ found Plaintiff had severe mental impairments "variously diagnosed to include major depressive disorder with psychotic features, bipolar disorder, posttraumatic stress disorder (PTSD), and anxiety, as well as obesity." AR 24. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (AR 24-26), and she had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] can perform tasks of a nature that can be learned within a short demonstration period of approximately 30 days with no more than frequent changes to the work tasks and duties. She can work primarily with things, rather than people, such that the work contract with others is only on an occasional basis. She can maintain concentration, persistence[,] and pace for two hours at a time before taking a regularly scheduled break and returning to work throughout the workday. [AR 26.]

Considering Plaintiff's RFC and the VE's testimony, the ALJ found she was capable of performing her past relevant work as a laundry worker (Dictionary of Occupational Titles ["DOT"] 369.677-010). AR 32. Thus, the ALJ concluded Plaintiff was not under a "disability," as defined in the Social Security Act, from November 1, 2013, through the date of the decision. AR 32. Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 1-5.

## II.
## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds.

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. § 404.1520(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past

relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

### III.
### DISCUSSION

The parties present three disputed issues, reordered as:

Issue No. 1: Whether the ALJ properly considered the State agency opinions;

Issue No. 2: Whether the ALJ properly weighed the treating source opinion; and

Issue No. 3: Whether the ALJ properly evaluated Plaintiff's subjective complaints.

Jt. Stip. at 3.

A.   **Consideration of State Agency Opinions.**

In Issue No. 1, Plaintiff contends that at, despite assigning the State agency opinions significant weight, the ALJ failed to incorporate the opined limitations into the RFC. Jt. Stip. at 19-21, 23-24.

   **1. Applicable Law**

A claimant's RFC is "the most [she] can still do" despite her impairments and related symptoms, which "may cause physical and mental limitations that affect what [she] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). In determining the RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms . . . that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted); 20 C.F.R. § 404.1545(a)(1). The ALJ must also consider all the medical opinions "together with the rest of the relevant evidence [on record]." 20 C.F.R. § 404.1527(b).

The ALJ considers findings by State agency medical consultants and experts as opinion evidence. 20 C.F.R. § 404.1527(e). "[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam). An ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Similarly, an ALJ is also not obligated to discuss every word of a doctor's opinion or include limitations not actually assessed by the doctor. See Fox v. Berryhill, 2017 WL 3197215, *5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012. However, an ALJ must discuss significant and probative evidence that is contrary to the ALJ's findings and explain why it has been rejected. See Robbins, 466 F.3d at 883; Vincent v.

Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (the ALJ must discuss significant and probative evidence and explain why it was rejected).

### 2. State Agency Opinions

#### i. Dr. Dalton

On May 9, 2016, Dr. Brady Dalton, PsyD, reviewed the medical record for the initial determination on Plaintiff's application for DIB. In the "Mental [RFC] Assessment" ("MRFCA") section, he found Plaintiff not significantly limited in her ability to: (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) sustain an ordinary routine without special supervision; (5) ask simple questions or request assistance; (6) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (7) be aware of normal hazards and take appropriate precautions; (8) travel in unfamiliar places or use public transportation; and (9) set realistic goals or make plans independently of others. AR 69-70

However, he found Plaintiff "moderately" limited in her ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) work in coordination with or in proximity to others without being distracted by them; (6) make simple work-related decisions; (7) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (8) interact appropriately with the general public; (9) accept instructions and respond appropriately to criticism from supervisors; (10) get along with coworkers or peers without distracting them or exhibiting behavior extremes; and (11) respond appropriately to changes in the work setting. AR 69-70.

Finally, when asked in the MRFCA to "[e]xplain in narrative form the presence and degree of specific understanding and memory capacities and/or limitations," Dr. Dalton provided the following: "[Plaintiff] is able to remember basic workplace locations and procedures. Available data suggests that [Plaintiff] is able to remember and understand simple instructions." AR 69. When asked to narratively explain Plaintiff's "sustained concentration and persistence capacities and/or limitations," the doctor provided the following: "[Plaintiff] can complete routine 1 to 2 step assignments for up to 2 [hour] intervals during regular workday and workweeks." AR 69. When asked to narratively explain Plaintiff's "social interaction capacities and/or limitations," the doctor provided: "[Plaintiff] is able to interact with co-workers and supervisors on a superficial and non-collaborative basis. [Plaintiff] is capable of brief public contact." AR 70. Lastly, when asked to narratively explain Plaintiff's "adaptation capacities and or/limitations," the doctor provided: "[Plaintiff] would work best in structured environments with predictable work tasks and with minimal social contacts with others." AR 70.

### ii.   Dr. Adamo

Dr. S. Adamo, PsyD., reviewed Plaintiff's claim on reconsideration. AR 80-82. On July 26, 2016, the doctor affirmed the opinion of Dr. Dalton "as written." AR 82.

### 3.   Analysis

Having carefully reviewed the record, the Court agrees with Plaintiff that the ALJ erred in his assessment of the opinions. The ALJ afforded the opinions "significant weight," and found them "reasonably consistent with the longitudinal record," including evidence submitted later documenting Plaintiff's mental health complaints. AR 30. The ALJ stated that he "incorporated limitations consistent with these opinions in the . . . [RFC]." AR 31.

As Plaintiff notes, the ALJ did incorporate into the RFC limitations to simple tasks and only occasional contact with others (Jt. Stip. at 20-21, AR 26), and those correspond roughly to some of Dr. Dalton's narrative limitations. But, as Plaintiff further notes and Defendant concedes, the RFC does not have a limitation to 1- to 2-step assignments. Jt. Stip. p. 21, 23. This limitation was significant and probative because it severely limited Plaintiff's ability to work and the scope of jobs she can perform. It was one of only four narrative limitations in the opinions; the ALJ incorporated some, but ignored others without further explanation. See, e.g., Nathan v. Colvin, 551 F. App'x 404, 408 (9th Cir. 2014) (noting the Agency's Program Operations Manual System ("POMS") directs the ALJ to use Section III the MRFCA, finding no error because the ALJ included all limitations identified in Section III); Dulmaine v. Colvin, 2015 WL 9307265, at *7 (E.D. Wash. Dec. 21, 2015) (describing narrative findings as "critical components" of State agency reviewing physician opinions)[2]; Piacente v. Colvin, 2014 WL 1912060, at *3 (W.D. Wash. May 12, 2014) (noting the ALJ is directed to consider the "narrative portion" of the State agency MRFCA). Accordingly, the ALJ was required to discuss the limitation and explain why it was rejected. See Robbins, 466 F.3d at 883; Vincent, 739 F.2d at 1395; Brown-Hunter, 806 F.3d at 492 (federal courts "demand that the agency set forth the reasoning behind its decisions in a way

---

[2] As explained by the court in Dulmaine:

> [POMS] an internal Social Security Administration document, provides, in pertinent part, that "[i]t is the narrative written by the psychiatrist or psychologist in section III . . . that adjudicators are to use as the assessment of RFC." "The POMS does not have the force of law, but it is persuasive authority." Warre v. Comm'r of Soc. Sec. Admin., (439 F.3d 1001, 1005 (9th Cir. 2006)).

Dulmaine, 2015 WL 9307265, at *7 n.3.

that allows for meaningful review"); Alvarez v. Astrue, 2012 WL 282110, at *3 (C.D. Cal. Jan. 26, 2012) ("If the RFC assessment conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted.").[3]

Plaintiff contends the error is harmful because the ALJ determined she could perform her past relevant work as a laundry worker, but the DOT describes the mental demands of that job as Reasoning Level of 3,[4] and the Ninth Circuit has determined "'there is an apparent conflict between a claimant's limitation to one and two step tasks and a job requiring reasoning exceeding Level 1.'" Jt. Stip. 21 (quoting Morrison v. Berryhill, 2018 WL 4521208, at *6 (E.D. Cal. Sept. 20, 2018) and citing Rounds, 807 F.3d at 1003). The Commissioner does not respond to Plaintiff's argument, except to say that Plaintiff "had specifically demonstrated the ability to perform the laundry position over a period of years"[5] and noting, without further

---

[3] Defendant mentions that the ALJ noted Plaintiff responded positively to treatment and the State agency opinions were consistent with Plaintiff's daily activities. Jt. Stip. at 22-23; AR 30-31. To the extent those reasons were intended to discount the more-restrictive limitations in the State agency opinions despite giving them "significant weight," it is unclear which reason was intended to apply to which limitation, and why. See Brown-Hunter, 806 F.3d at 492; Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[4] This reasoning level demands that the employee be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in from standardized situations." DOT 369.677-010, 1991 WL 673058.

[5] Of note, the ALJ found Plaintiff could perform the position as generally described in the DOT, not as actually performed. AR 32, 57; Carmickle v. Comm'r Sec. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008) ("The DOT is the best source for how a job is generally performed.") (internal quotation marks omitted)); SSR 00-4p at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.").

explanation, that the ALJ gave the opinions "significant" but not "controlling" weight. Jt. Stip. at 23.

Plaintiff has shown a conflict between the missing limitation and the DOT, a conflict not properly resolved by the ALJ, and has shown that the error is not harmless. In <u>Rounds</u>, the jobs identified by the VE all required Reasoning Level 2, and the claimant argued her limitation to 1- to 2-step tasks matched Level 1. 807 F.3d at 1003. The Ninth Circuit agreed, explaining:

> There was an apparent conflict between Rounds' RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." The conflict between Rounds' RFC and Level Two reasoning is brought into relief by the close similarity between Rounds' RFC and Level One reasoning. Level One reasoning requires a person to apply "commonsense understanding to carry out simple one- or two-step instructions."

<u>Id.</u> Thus, <u>Rounds</u> determined there is an apparent conflict between a claimant's limitation to 1- and 2- step tasks and a job requiring reasoning exceeding Level 1. See <u>Morrison</u>, 2018 WL 4521208, at *6 (holding the same); <u>Lara v. Astrue</u>, 305 F. App'x 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs are elementary, exemplified by such tasks as counting cows coming off a truck, and someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication-in other words, Reasoning Level 2 jobs."); <u>Grigsby v. Astrue</u>, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010) ("The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning"). Accordingly, inclusion of the limitation in the RFC and presentation of it to the VE could have precluded the only job identified by the ALJ that Plaintiff could perform,

11

a result not "inconsequential to the ultimate nondisability determination." Brown-Hunter, 806 F.3d at 492; Molina, 674 F.3d at 1115.

Thus, the Court finds the ALJ failed to properly address at least one significant, probative limitation in the State agency opinions, and such error was not harmless.

**B.     Remand is appropriate.**

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where further proceedings would serve no useful purpose or where the record has been fully developed, a court may direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the claimant is disabled. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court concludes remand for further proceedings is warranted. See Morrison, 2018 WL 4521208, at *7 (remanding on same issue). On this record it is not entirely clear whether Plaintiff was actually disabled through the date of the decision. See Bunnell, 336 F.3d at 1115-16. Ultimately, despite finding significant narrative limitations, the State agency doctors determined Plaintiff was not disabled. Moreover, the ALJ found Plaintiff looked for employment and sought money to open a store during the period she claimed she would not work. AR 28-29, 439, 441, 512 see Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (ALJ properly discredited claimant's testimony in part because he held himself out as available for work). These and other issues were addressed in the ALJ's assessment of Plaintiff's subjective

testimony, and are intertwined with Plaintiff's claim of disability. See Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); see also Vaughn v. Berryhill, 242 F. Supp. 3d 998, 1010 (E.D. Cal. 2017) (dispensing of exhaustive analysis of remaining issues because they were "inescapably linked to conclusions regarding the medical evidence"); Alderman v. Colvin, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of ALJ's decision to discount claimant's testimony and give appropriate consideration to physician's opinions, step-two findings, and step-five analysis). Because it is unclear, considering these issues, whether Plaintiff was in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115-16. The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

    Accordingly, on remand, the ALJ shall reassess the State agency opinions, incorporate the significant and probative limitations into the RFC and present them to a VE, or provide valid reasons for declining to do so, and proceed through the remaining steps of the disability analysis if warranted to determine whether Plaintiff could still perform her past relevant work, or what other jobs if any, Plaintiff was capable of performing that existed in significant numbers and the national or regional economies.

## IV.

## ORDER

    Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the

Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: September 08, 2020

_____
JOHN D. EARLY
United States Magistrate Judge